# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HIGHSTEPPIN' PRODUCTIONS, LLC., | * | |
| Plaintiff, | * | |
| versus | * | |
| | * | |
| GEORGE PORTER, JR., d/b/a | * | |
| ORA'S PUBLISHING, INC.; | * | |
| DAVID RUSSELL BATISTE, JR., d/b/a | * | |
| NOT SO SERIOUS MUSIC; | * | |
| BRIAN STOLTZ, d/b/a | * | |
| LONG OVERDUE MUSIC; | * | |
| PORTER, BATISTE, STOLTZ, LLC., | * | Docket Number |
| a Louisiana Limited Liability Company; | * | |
| LIVE NATION, INC. d/b/a | * | 1:09-cv-12208 |
| HOUSE OF BLUES, | * | |
| a California Corporation; | * | |
| FUNKY METERS, INC., | * | |
| a Louisiana Corporation; | * | |
| ELEVATION GROUP, INC.; | * | |
| BUGALOO MUSIC, | * | |
| a California Corporation; | * | |
| SCREEN GEMS-EMI MUSIC, INC., | * | |
| a New York Corporation; | * | |
| BUG MUSIC, INC., | * | |
| a California Corporation; and | * | |
| CABBAGE ALLEY MUSIC, | * | |
| a California Corporation | * | |
| Defendants | * | |

*********************************************

# LEAVE TO FILE MEMORANDUM IN EXCESS OF LOCAL RULE 7.1(b)(4)'S 20-PAGE LIMITATION GRANTED ON MARCH 4, 2010

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER, PURSUANT TO FRCP 12(b)(2), (3) and (6), FRCP 17, and 28 U.S.C. §§ 1391, 1404 and 1406

**NOW INTO COURT,** through undersigned counsel, come Defendants, George Porter,

Jr. ("Porter"), David Russell Batiste, Jr. ("Batiste"), Brian Stoltz ("Stoltz") and Porter-Batiste-

1

Stoltz LLC ("PBS LLC") (collectively and/or individually "Defendants"), who appear herein solely for purposes of: 1) contesting the propriety of this action under Rule 17 and Rule 12(b)(6), given that the named plaintiff is a defunct (and thus, non-existent) former juridical entity; 2) contesting personal jurisdiction as to all Defendants pursuant to FRCP 12(b)(2); 3) contesting venue in this judicial district as to all Defendants pursuant to FRCP 12(b)(3); and 4) requesting a transfer of venue pursuant to 28 U.S.C. §§ 1404 and/or 1406.  For the reasons more fully set forth below, it is respectfully submitted that Defendants' Motion To Dismiss, or Alternatively, To Transfer ("Motion"), is legally and factually efficacious, and thus, should be granted. Further, it is respectfully submitted that this matter should, at a minimum, be transferred to the Eastern District of Louisiana ("USDC-EDLA"), if not dismissed outright.

## I.    <u>INTRODUCTION and BACKGROUND FACTS</u>

Defendants are Louisiana-born and Louisiana-based musicians and a Louisiana LLC, none of whom reside in Massachusetts.  Moreover, none of the Defendants currently have, nor had, at any time relevant to these proceedings, any regular or systemic contacts in this judicial district.  In fact, Defendants have not even had sufficient minimal contacts to establish personal jurisdiction.  Plaintiff, Highsteppin' Productions, LLC ("Plaintiff" or "Highsteppin'") is a defunct Massachusetts LLC, purportedly with an office in Somerville, Massachusetts, which was **formed** by its principal, Philip Stepanian ("Stepanian"), **not only after his initial meeting with Defendants at a wedding gig in January 2005[1], but to facilitate Stepanian's fledgling foray into the artistic management arena**.

Well after making initial contact with Defendants, in Louisiana, on or about January 18, 2005, and well after first meeting them in person, in Florida, on January 22, 2005, Stepanian

formed Highsteppin' Productions, LLC, on June 13, 2005. *Exhibit "B"* (Commonwealth of Massachusetts Secretary of State website printout regarding status of Highsteppin'). **Amazingly, Highsteppin' no longer exists, as it was subjected to an involuntary dissolution, per court order or action by the Commonwealth's Secretary of State, on April 30, 2009, almost eight (8) full months before the commencement of this litigation[2].** *Id.* As such, it is respectfully submitted that the putative named plaintiff is, in actuality, a non-existent, defunct, former juridical entity which lacks the requisite capacity to be a named plaintiff, warranting dismissal pursuant to Rule 17(a), given that Highsteppin' has never merged or otherwise continued its juridical existence, negating any possibility that a real party in interest can be substituted for the defunct LLC.

After first broaching the subject of possibly working for Defendants in some type of marketing capacity, at the January 2005 wedding in Florida, Stepanian began to make overtures to the Defendants regarding artistic management, during a meeting at Defendant Porter's property in New Orleans, on or about April 20, 2005, which had been set up to discuss a possible merchandising arrangement. *Exhibits "C" and "D"* (Affidavits of Defendants Porter and Stoltz). Stepanian then organized Highsteppin', on June 13, 2005 (which, again, was involuntarily dissolved on April 30, 2009). Approximately one (1) year later, Defendants and plaintiff entered into a personal management agreement ("Contract"), dated May 8, 2006, *see Exhibit "1" to Plaintiff's Complaint[3]*, which had an initial 2-year term, with an additional 18-month term Option, which was properly exercised by plaintiff. The Contract expired, as per its

---

[1] Stepanian's own e-mail of January 18, 2005, establishes that he made initial contact with Defendant Porter, in connection with an engagement PBS was playing at a wedding in Florida, seeking to discuss "marketing ideas for your bands." *Exhibit "A"* (Stepanian e-mail of 1/18/05 to Porter).

[2] Defendants reserve all rights to assert entitlement to an award of sanctions, pursuant to FRCP 11 or otherwise, at a future date, based on the improper institution of this litigation and/or plaintiff's efforts to secure injunctive relief.

[3] Defendants would ask the Court to take judicial notice that plaintiff's Exhibit "1" violates the Local Rules pertaining to redaction of social security numbers ("SSN"), as it contains all three individual Defendants' full SSNs.

terms and conditions, on November 7, 2009, pursuant to timely written notification of non-renewal, which plaintiff admits it received "[o]n or about September 11, 2009. *Complaint, PACER No.1, ¶ 34; Amended Complaint, PACER No. 14, ¶ 37.*

Further, the only relevant connection between the parties to this litigation and this forum is that Plaintiff's principal place of business is in this judicial district. Defendants were initially contacted by Stepanian in Louisiana, and first met him in Florida, prior to plaintiff's creation. Stepanian initially wanted to work for Defendants in a merchandising capacity, and came to New Orleans, Louisiana, for a meeting regarding same in April 2005. During that meeting, Stepanian began making overtures regarding a possible management relationship with Defendants, which did not materialize until approximately one (1) year later. Further, Defendants only visited Highsteppin's Somerville, Massachusetts' office on two occasions, both of which were well after the Contract had been executed: the first visit was a cursory visit, on August 24, 2006, which revealed that the office was not yet functional, and the second was a visit on August 17, 2009, ostensibly to discuss finances. *Exhibits "C" and "D".*

Additionally, as shown by the Affidavit of Mr. Greg Eveline, Esquire, *Exhibit "E"*, plaintiff initially sought to include a forum-selection clause in the Contract that purported to establish, by consent, venue and jurisdiction in Massachusetts. That offending provision was rejected by Defendants. The Contract was ultimately silent as to forum selection, as it does not designate any applicable or stipulated jurisdiction. Moreover, the Contract's recitation that it was "entered into in the Commonwealth of Massachusetts" lacks both legal and factual efficacy, and there is serious doubt whether that specific language was actually provided to Defendants and/or their counsel, prior to or contemporaneously with execution of the Contract.

## II.    LAW AND ARGUMENT

As an initial matter, it is respectfully submitted that plaintiff is not, and cannot be, a real party in interest, given that it was subjected to an involuntary dissolution as of April 30, 2009, and thus, is a defunct, non-existent, former juridical entity.  Further, given plaintiff's non-existence, and the undeniable fact that the Contract at issue is only between plaintiff and the Defendants, it appears that no real party in interest could possibly be substituted for plaintiff, warranting dismissal.  Equally fatal to any further prosecution of this matter, especially in Massachusetts, is the lack of any personal jurisdiction in Massachusetts as to all Defendants, rendering this matter susceptible to dismissal pursuant to FRCP 12(b)(2), and thus, concomitantly susceptible to dismissal, due to improper venue, pursuant to FRCP 12(b)(3), or alternatively, transfer under 28 U.S.C. § 1406(a).  Moreover, it is respectfully submitted that, at a minimum, and under any analysis, a transfer of venue to the USDC-EDLA[4], pursuant to 28 U.S.C. §§ 1391 and 1404(a), is eminently appropriate, in the interests of judicial efficiency and for the convenience of the parties and witnesses.  Given that this Honorable Court's grant of Defendants' request for a transfer of venue to USDC-EDLA under § 1404(a) would obviate any Rule 12 analysis regarding personal jurisdiction or venue, Defendants will initially posit their "transfer-of-venue" argument under §1404(a), and then, alternatively, under §1406(a).

### A.    A TRANSFER OF VENUE IS EMINENTLY APPROPRIATE

With a full reservation of rights to assert, pursuant to FRCP 12(b)(3) and 28 U.S.C. § 1391(a) and (c), that venue is improper in this judicial district, and thus, subject to transfer under 28 U.S.C. § 1406(a), Defendants first assert that, *arguendo,* even if venue were proper herein, which is specifically disputed, a transfer of venue to USDC-EDLA, pursuant to 28 U.S.C. §1404(a), is fully warranted.

### 1.    Applicable Standard

A court may consider venue before personal jurisdiction when there are sound reasons for doing so. *LeRoy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)). In fact, venue statutes are generally designed for the benefit of defendants, and when determining what events or omissions give rise to a claim, the focus should be on relevant activities of the defendant, **not of the plaintiff**, because, as the U.S. Supreme Court noted: "[I]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *LeRoy.,* 443 U.S. at 183-84 (footnote omitted; emphasis in original).

### 2.    No Venue In USDC-Mass Under 28 U.S.C. § 1391(a)(2)

A simple application of this standard to the matter *sub judice* reveals that all the significant acts undertaken by Defendants, which could possibly give rise to plaintiff's claims, occurred outside the District of Massachusetts. As such, venue under 28 U.S.C. § 1391(a)(2) can not lie in this district. Further, as shown below, the relevant analysis under either 28 U.S.C. § 1404(a) or § 1406(a) also militates in favor of finding that venue more appropriately lies in the USDC-EDLA.

Courts in other circuits have held that acts or omissions must be more than tangentially connected to a particular location to qualify as "substantial" under § 1391(a)(2). *See Siegel v. Homestore, Inc.,* 255 F.Supp.2d 451, 455 (E.D.Pa.2003) and cases cited therein. These courts recognize that the "substantiality" requirement is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute. *See Cottman Transmission Systems, Inc., v. Martino,* 36 F.3d 291, 294 (3d Cir.1994). Hence, the test for determining venue is not the defendant's overall "contacts" with a particular district, but

---

[4] Defendants acknowledge, as they must, that each of them is subject to personal jurisdiction in the USDC-EDLA.

rather, only the location of those specific "events or omissions giving rise to the claim." *Cottman,* 36 F.3d at 294.

Under this test, any averments that Defendants may have contacted plaintiff via telephone, mail or e-mail, in Massachusetts, relating to unspecified business matters, is not indicative of "substantiality." This is particularly true since plaintiff has not identified, let alone revealed the specific content of, any purported communications with the Defendants, thus fatally hampering this Court's ability to determine what, if any, acts or omissions by the Defendants might have given rise to plaintiff's claims, as opposed to being merely tangential contacts.

Additionally, the locus of damage to a plaintiff is **not** a proper basis for setting venue. *See Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995). In fact, there is no cogent argument that Defendants were to perform their contractual obligations in Massachusetts, or that any alleged non-performance occurred in Massachusetts. Likewise, there are no cogent arguments that Defendants' alleged tortious conduct occurred in Massachusetts. As such, it is respectfully submitted that this Court should find that a substantial part of the events or omissions giving rise to the claims alleged by plaintiff did not occur in Massachusetts, and thus under 28 U.S.C. § 1391(a)(2), venue therein is not proper, giving rise to a transfer of venue to the USDC-EDLA under 28 U.S.C. § 1406(a). *See Fodor v. Hartman*, 2006 WL 1488894 (D. Colo., May 30, 2006).

### 3.    Transfer Under 28 U.S.C. § 1404(a)

Pretermitting, solely at this juncture, a more thorough analysis regarding whether venue lies in Massachusetts under 28 U.S.C. § 1391(a)(2), even if it did, a transfer to the USDC-EDLA in warranted under the specific facts of this case. 28 U.S.C. § 1404(a) permits a district court to transfer any civil action to any other district where it might have been brought, for the convenience of the parties, witnesses, and in the interest of justice. Congress adopted this statute

"to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The Barge F.B.L.- 585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

A determination of proper venue must hinge upon the nature of the suit, and not simply upon a recitation of underlying historical facts which merely provide a frame of reference as to the genesis and evolution of a particular case. *Cottman,* 36 F.3d at 295. Again, events or omissions that might only have some tangential connection with the dispute in litigation are insufficient, as substantiality is intended to preserve the element of fairness. *Id.,* 36 F.3d at 294; *see also Lackawanna v. St. Louis County, Mo.,* 2004 WL 503447 (M.D. Pa., Mar 12, 2004). A district court must decide a 1404(a) issue after considering and balancing a number of case-specific factors. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

The First Circuit Court of Appeals has held that a number of factors should be considered, when conducting a § 1404(a) analysis, including: 1) the convenience of the parties and the witnesses; 2) the availability of documents; 3) where the events at issue in the litigation took place; 4) the relative cost of trying the case in each forum; 5) the public interest in having local controversies adjudicated locally; 6) the possibility of consolidation; and 7) the order in which the district court obtained jurisdiction. *Coady v. Ashcroft & Gerel,* 223 F.3d 1, 11 (1st Cir. 2000); *Cianbro Corp. v. Curran-Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir. 1987); *CFTC v. Cromwell Fin. Servs.,* 2006 WL 435451 (D. NH 2006).

Also, while Defendants are mindful that they bear the burden of justifying a transfer under § 1404(a), and that a plaintiff's choice of forum is entitled to due deference, courts in this

Circuit have cautioned, however, that the strength of any presumption in favor of the plaintiff's choice of venue **should not be overestimated**, because the U.S. Supreme Court has reasoned that § 1404(a) permits courts to grant venue transfers, upon a lesser showing of inconvenience than that required in a *forum non conveniens* rubric, as the district court's discretion is broader. *New England Wood Pellet, LLC v. New England Pellet, LLC,* 419 B.R. 133, 148 (D. NH 2009); *Coady,* 223 F.3d at 11 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

Further, numerous cases in this Circuit have emphasized that a multitude of factors are integral to a § 1404(a) venue transfer calculus. Some cases have stated that "trial efficiency" is a paramount concern. *JMTR Enters., LLC v. Duchin,* 42 F.Supp.2d 87, 99-100 (D.Mass.1999) (citing *Coady v. Ashcraft & Gerel,* 996 F.Supp. 95, 101 (D.Mass.1998), *rev'd,* 223 F.3d 1, 11 (1st Cir.2000)). Others, including this Honorable Court, have found the relative financial positions of the parties to be important. *Sigros v. Walt Disney World Co.,* 129 F.Supp.2d 56, 71 (D.Mass.2001) (Gorton, J.); *Kleinerman v. Luxtron Corp.,* 107 F.Supp.2d 122, 125 (D. Mass. 2000). **Many have found the convenience of the witnesses to be most important**. *E.g., Home Prods. Int'l-N. Am., Inc. v. PeopleSoft USA, Inc.,* 201 F.R.D. 42, 48 (D.Mass.2001) (Keeton, J.); *Princess House, Inc. v. Lindsey,* 136 F.R.D. 16, 18 (D.Mass.1991) (Bowler, Mag.).

In addition, a learned treatise on this subject posits that any number of private and public interests are implicated when ruling on a request to change venue:

> While there is no definitive list of factors that must be considered, courts typically look to some or all of the following 'public' 'and private' interest factors to determine whether the proposed alternative forum would better serve the convenience and interest of justice requirements:" (i) the plaintiff's original choice of forum, (ii) where the events at issue in the lawsuit took place, (iii) the convenience of the parties, (iv) the convenience of the witnesses, (v) the comparative availability of compulsory process to compel the attendance of unwilling witnesses, (vi) the location of the physical evidence, (vii) the

enforceability of the judgment, (viii) in which forum can the case be tried more inexpensively and expeditiously, (ix) the relative court congestion in the two forums, (x) the public interest in local adjudication of local controversies, (xi) the relative familiarity of the courts with the applicable law, (xii) whether transfer is in the "interest of justice," (xiii) which forum would better serve judicial economy, and (xiv) whether a contractual clause specifies a specific forum to resolve contractual disputes.

17 *Moore's Federal Practice* § 111.13[1][b] (3d ed.2001).

### a.    Convenience Of The Witnesses And Parties

Numerous Judges in this District concur that that convenience of the witnesses is an extremely important, if not the most important, factor to be analyzed when deciding to transfer venue. *See Brant Point Corp. v. Poetzsch,* 671 F.Supp. 2, 3 (D.Mass.1987) (Wolf, C.D.J.) (citing 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE 2d § 3851 at 415 (1986) ("convenience of the witnesses is probably the most important factor, and the factor most frequently mentioned")); *Princess House,* 136 F.R.D. at 18 (Bowler, M.J.) (same); *Home Prods. Int'l-N. Am.,* 201 F.R.D. at 49 (Keeton, D.J.) ("the convenience of witnesses is an extremely important factor"). "Th[is] Court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Princess House,* 136 F.R.D. at 18. "A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.*

Defendants would direct the Court's initial attention to the obvious numerical disparity between the parties to the underlying Contract. It is beyond dispute that all three individual defendants, as members of the defendant LLC, will be witnesses regarding the facts underlying the Contract formation, interaction between the individual Defendants and plaintiff's sole operational member, Phil Stepanian, performance (or non-performance) of various contractual

obligations, and the expiration of the Contract. In contrast, there is only one main witness in Massachusetts regarding plaintiff's version of formation, performance, interaction and expiration; namely, Mr. Stepanian.

Further, the bulk of the non-party witnesses are in Louisiana, such as the wives of the individual defendants (including Mrs. Geo. Porter, Jr., Mrs. Brian Stoltz, the former Mrs. Rita Batiste), as well as other non-party witnesses regarding the Contract's formation in Louisiana during JazzFest 2006 (Mr. Eveline), and subsequent events (Shannon Chabaud, accountant, Katrina Porter-Dean, administrative assistant). Also, it would be more advantageous to have the litigation moved to New Orleans, to facilitate the attendance of non-party witnesses, as most, if not all of those individuals reside within 50 miles of the USDC-EDLA. and thus, are amenable to that jurisdiction's subpoena power. Conversely, none of the anticipated witnesses, other than Mr. Stepanian, are automatically subject to this Honorable Court's subpoena power.

Moreover, given there is only one plaintiff, but at least four Louisiana defendants, each of whom may well need to retain separate counsel due to potential conflicts of interest, it would be considerably more convenient for plaintiff's lawyer to travel to New Orleans, as opposed to three individual defendants and, at this juncture, at least two lawyers, travel to Boston for depositions, hearings, status conferences, trial, and the concomitant panoply of court appearances inherent in this (or any) civil litigation. These factors strongly militate in favor of transfer.

    b.  <u>Cost of Litigation And Relative Financial Position Of The Parties</u>

Also, in that regard, to the extent that local counsel will need to be associated, Defendants would ask that the Court take judicial notice that the "going rate" for attorneys in Louisiana is, under any stretch of the imagination, are about half, and certainly considerably less than, the rate of comparably-experienced attorneys in the Boston area. Likewise, the individual Defendants

are neither wealthy nor in a financial position comparable to Mr. Stepanian[5]. These factors militate in favor of transfer.

c.   <u>Enforcement Of Any Judgment</u>

In the event that Plaintiff receives a monetary judgment, the entitlement to which Defendants vehemently dispute, enforcement of such a judgment in Louisiana, against Louisiana residents whose assets (limited as they are) are located in Louisiana, would be greatly facilitated if said judgment issued from the USDC-EDLA, as opposed to this Honorable Court. This factor militates in favor of transfer.

d.   <u>Defendants Objected To A Massachusetts Forum Clause</u>

When the underlying negotiations occurred, plaintiff initially sought to insert a forum clause in the Contract, requiring the parties to litigate in Massachusetts. Based on the obviously unacceptable inequities of that provision, Defendants first sought to designate Louisiana as the appropriate forum, and upon plaintiff's resistance, then agreed to omit any forum clause. *Exhibit "E"*. This factor is neutral at best.

e.   <u>Where The Events At Issue In The Litigation Took Place</u>

Most, if not all, of the relevant events, and certainly all of the Defendants' relevant conduct, occurred beyond the borders of Massachusetts, including the initial contact between the parties, Contract negotiations and formation, and virtually all of the Defendants' performance of their respective Contract obligations. Defendants were initially contacted by Stepanian in Louisiana, and first met him in Florida, prior to plaintiff's existence. Stepanian initially wanted to work for Defendants in a merchandising capacity, and came to New Orleans, Louisiana, for a meeting regarding same in April 2005. During that meeting, Stepanian began making overtures

---

[5] If the representations in plaintiff's pleadings are remotely accurate, plaintiff has spent in excess of $500,000.00, indicating considerable financial resources and liquidity that vastly exceed Defendants' limited resources.

12

regarding a possible management relationship with Defendants, which did not materialize until approximately one (1) year later.  Further, Defendants only visited Highsteppin's Somerville, Massachusetts' office on two occasions, both of which were well after the Contract had been executed: the first visit was a cursory visit, on August 24, 2006, which revealed that the office was not yet functional, and the second was a visit on August 17, 2009, ostensibly to discuss finances.  *Exhibits "B" and "C"*.  This factor decidedly militates in favor of transfer.

f.     Availability of Documents and Interests of Justice

This case is not particularly document intensive, and most, if not all, the relevant material will be financial data and assorted communications.  Also, given that documents are, in this day and age, mobile (via e-mail, electronic storage, etc.), this factor is insignificant.  *Princess House,* 136 F.R.D. at 21.  This is because "most records and documents now can be transported easily or exist in miniaturized or electronic form."  *Boateng v. Gen. Dynamics Corp.,* 460 F.Supp.2d 270, 276 (D.Mass. 2006) (quoting 15 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3853).  Moreover, the interests of justice are not impacted to any appreciable degree in this case.  These factors also militate in favor of transfer.  Thus, in sum, transfer under § 1404(a) is eminently appropriate.

**B.    VENUE AND PERSONAL JURISDICTION ARE LACKING**

Defendants maintain, pursuant to Rule 12(b)(2) and (3), that neither personal jurisdiction, nor venue under 28 U.S.C. § 1391, are proper in this Honorable Court, as more fully set forth below.  As such, Defendants respectfully request that this Honorable Court dismiss this matter, or, at a minimum, transfer it to a jurisdiction which: 1) undisputedly has personal jurisdiction; and 2) is clearly the more appropriate venue: namely, the USDC-EDLA.  Inasmuch as a ruling which transfers this matter due to improper venue obviates reaching the personal jurisdiction

issue, Defendants respectfully address venue first, given that when a defendant moves to dismiss or transfer for lack of personal jurisdiction and improper venue, a court may consider venue before personal jurisdiction when there are sound reasons for doing so. *Leroy,* 443 U.S. at 180. Concomitantly, the language of 28 U.S.C. § 1406(a) is amply broad enough to authorize the transfer of cases, however "wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

### 1. Rule 12(b)(3) Requires Dismissal Or Transfer, As Venue Does Not Exist Under § 1391

Paragraph 11 of plaintiff's Complaint, and paragraph 14 of the Amended Complaint, contain the identical naked assertion that "[v]enue in this action is proper pursuant to 28 U.S.C. § 1391", without additional statutory specificity or factual support. Moreover, plaintiff's pleadings name three individual defendants (all of whom are admittedly Louisiana residents), and a number of juridical defendants, including a Louisiana LLC and various California-based corporations. As shown below, whether venue in proper in Massachusetts is doubtful at best, and arguably non-existent. Thus, in the aggregate, plaintiff cannot reasonably dispute that the USDC-EDLA is the more appropriate venue.

### a. Applicable Statute

28 U.S.C. § 1391 states, in pertinent part:

> **(a)** A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may

otherwise be brought.

...................

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside within which it has the most significant contacts.

Given the paucity of plaintiff's venue-related allegations, it is unclear how plaintiff arrived at the conclusion (albeit erroneous) that venue lies in Massachusetts, but a cursory review of § 1391 reveals otherwise. The three individually-named defendants all, undisputedly, reside in Louisiana, and they **do not reside in Massachusetts nor did they when this litigation commenced, nor at any time thereafter.** Likewise, all remaining juridical defendants (Louisiana LLC and California-based corporations) also undeniably reside in Louisiana, pursuant to § 1391(c), as all those juridical entities do enough business in Louisiana to satisfy due process concerns[6].

As such, venue clearly lies in the USDC-EDLA under § 1391(a)(1) and (c). Conversely, venue clearly does not lie in Massachusetts under § 1391(a)(1). *A fortiori*, any analysis of whether venue lies in Massachusetts, under § 1391(a)(3), is moot, given § 1391(a)(1)'s preclusive applicability. Thus, by default, the only possible basis for venue in Massachusetts could be § 1391(a)(2). However, as shown below, a § 1391(a)(2) analysis yields the inescapable conclusion that venue cannot be proper in Massachusetts, because "a substantial part of the events or omissions giving rise to the claim" *sub judice*, did not "occur" in Massachusetts, but

---

[6] Defendants acknowledge that that California-based corporate defendants may also reside in Massachusetts.

rather, in Louisiana. This is especially true, in light of the parties' clear rejection and repudiation of Massachusetts as a consensual forum, by virtue of the ill-fated forum-selection clause (in favor of Massachusetts) that was eliminated from the final version of the Contract.

b.    Plaintiff Cannot Meet Its Burden

When a case has been filed in the wrong federal court, such as herein, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2006). A motion to dismiss for lack of venue under Rule12(b)(3) puts **the burden on the plaintiff** to demonstrate that it has met its obligation to institute its action in a permissible forum. 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1352 at 264-65 (2d ed.1990); *see also Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.,* 789 F.Supp. at 1206 (D.N.H.1992). Plaintiff has fallen woefully short of satisfying this burden, and cannot realistically do so under any stretch of the imagination. As shown above, § 1391(a)(2) provides the only possible basis for finding that venue lies in Massachusetts, but an application of the uncontroverted facts to apposite authority negates any possibility of such a finding.

Under § 1391(a)(2), when considering where a "substantial part of the events or omissions giving rise to the claim occurred," the court looks "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." *Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 42 (1st Cir.2001); *see Adam v. Hensley*, 2008 WL 2079966 (D. NH., May 16, 2008); *Global Health Alternatives, Inc., et al., v. Ellon U.S.A., Inc., et al.,* 1999 WL 33117099 (D. Maine, March 24, 1999). Here, the vast majority, if not virtually all, of the events giving rise to plaintiff's assorted delictual and contractual claims occurred outside Massachusetts, including, but not limited to: 1) the Contract was primarily discussed

(negotiated), and was undeniably signed, in New Orleans; 2) the parties specifically scuttled a forum selection clause in favor of Massachusetts; 3) Defendants' performance of the contract occurred entirely outside Massachusetts, other than a very limited number of live appearances therein (none of which are alleged to form the basis of plaintiff's claim(s) for damages); and 4) none of the Defendants' acts and/or omissions that allegedly constitute the breach(es) of the Contract occurred in Massachusetts.

As set forth above, venue statutes are generally designed for the benefit of defendants, and when determining what events or omissions give rise to a claim, the focus should be on relevant activities of the defendant, **not of the plaintiff**. *See Fodor v. Hartman*, 2006 WL 1488894 (D. Colo., May 30, 2006), citing *Goff v. Hackett Stone Co.,*185 F.3d 874 (Table), 1999 WL 397409 (10th Cir., June 17, 1999)*,* quoting *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995). Furthermore, the locus of damage to a plaintiff is not a valid basis for establishing venue. *See Woodke,* 70 F.3d at 985. *See also LeRoy,* 443 U.S. at 183-84, in which the Supreme Court stated: "[I]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." (Footnote omitted; emphasis in original).

Other circuits hold that acts or omissions must be more than tangentially connected to a particular location to qualify as "substantial" under § 1391(a)(2). *See Siegel,* 255 F.Supp.2d at 455. These courts recognize that the "substantiality" requirement is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute. *See Cottman,* 36 F.3d at 294. A determination of proper venue thus "must be guided by the 'nature of the suit' not by the underlying historical facts which simply provide this Court with a frame of reference as to how this case evolved." *Grey v. State of New*

*Jersey,* No. Civ. A. 01-1561, 2001 WL 34355649, at *4 (E.D.Pa. Dec.26, 2001) (citing *Cottman,* 36 F.3d at 295).

"Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman,* 36 F.3d at 294.  Hence, the test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those "events or omissions giving rise to the claim," theoretically a more easily demonstrable circumstance than where a claim "arose." *Id.*  Thus, any averment by plaintiff that Defendants may have made contact via telephone or e-mail to it in Massachusetts, is not indicative of "substantiality."

Also, as stated in *Cottman,* because it is the location of those "events or omissions giving rise to the claim," that are most significant, it is necessary to focus on the particular claims asserted by the plaintiff.  Plaintiff makes an assortment of allegations which are essentially claims that Defendants breached the Contract, and acted tortiously.  However, there is no allegation in plaintiff's Complaint, nor any evidence in any supporting affidavit, that Defendants failed to perform any contractual obligations in Massachusetts, or that any alleged breach occurred in Massachusetts.

The tort claims allege a variety of misrepresentations and other wrongful conduct allegedly undertaken by Defendants, but again, there are no allegations in plaintiff's Complaint, or any evidence in any affidavit, that Defendants engaged in any alleged tortious conduct in Massachusetts.  In fact, the contrary is true.  Moreover, any payments to Defendants by plaintiff are "not the events that give rise to the (plaintiff's) claims of breach.  At most, they provide the basis for some portion of the (plaintiff's) damages claim."  *Global Health,* 1999 WL 33117099

at *6-7; *Fodor*, 2006 WL 1488894; *Lackawanna,* 2004 WL 503447.

     Plaintiff cannot shoulder its burden of proving that venue is proper in Massachusetts under § 1391(a)(1) or (a)(2): conversely, the facts establish that venue is proper, under § 1391(a)(1) and (2), in the USDC-EDLA.  Because venue is not proper in Massachusetts under 28 U.S.C. § 1391(a)(1) or (2), venue can not be proper in Massachusetts under § 1391(a)(3). Defendants thus respectfully submit that dismissal, or at a minimum, transfer to the USDC-EDLA, pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a), is mandated.

### 2. Rule 12(b)(2) Also Requires Dismissal or Transfer Due To A Lack Of Personal Jurisdiction

     Plaintiff's pleadings assert that personal jurisdiction exists against the Defendants in Massachusetts under 28 U.S.C. § 1332, the Massachusetts Long-Arm Statute (M.G.L. ch. 223A), the "Due Process Clause of the United States Constitution", and "because (Defendants) assented to personal jurisdiction in an agreement with Highsteppin'".  *Complaint, PACER No.1, ¶¶ 2-5, 10; Amended Complaint, PACER No. 14, ¶¶ 2-5, 13.*  Plaintiff has not specifically identified[7] (nor produced) the purported "agreement" wherein Defendants allegedly "assented" to personal jurisdiction, and under any set of circumstances, Defendants dispute and contest the factual and legal validity of plaintiff's representations[8].  Suffice it to say that Defendants have not, and do not, concede nor assent to personal jurisdiction is Massachusetts.

---

[7] Defendants would like to point out, in general, that plaintiff's pleadings contain a number of factually-unsupported representations and factual omissions, which are, in actuality, either inaccurate, misleading, or merely legal conclusions masquerading as factual allegations.  One such glaring omission is plaintiff's failure to inform the Court that, pursuant to ¶ 6(b) of the Contract, Defendants were required to approve, in advance and in writing, any expenses defrayed, or monies advanced, to them by plaintiff, in excess of $750.00 for a single event, or $2,000.00 per monthly aggregate.  **No such documentary proof has been provided by the plaintiff, despite its procurement of injunctive relief from this Court which essentially "hostages" Defendants income from sources which are not part of the Contract at issue.  Once the jurisdictional issues are resolved, Defendants will address the propriety of plaintiff's efforts to obtain injunctive relief, in whichever forum ultimately hears the merits of this dispute.**

[8] Defendants reiterate that they: 1) specifically objected to, and jettisoned, a forum selection clause that sought to consensually establish jurisdiction and venue in Massachusetts; and 2) executed the Contract in Louisiana.

a.    Applicable Law

1.    *Prima Facie Standard/Plaintiff's Burden Of Proof*

When a defendant challenges personal jurisdiction, the Court may employ a range of procedures to resolve the issue, but under any rubric, the plaintiff bears the burden to prove the existence of personal jurisdiction under both the forum's long-arm statute and the Due Process clause of the Constitution: i.e., prove that sufficient contacts exist between the nonresident defendant and the desired forum. *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145-47 (1st Cir.1995) (delineating separate "prima facie," "preponderance of the evidence," and "likelihood" standards). The "prima facie" standard is the "most conventional." *Id.* at 145; s*ee, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 33-34 (1st Cir.1998). The plaintiff must make a *prima facie* case that "establishes sufficient facts on which to predicate jurisdiction over the defendant." *Stanton v. AM General Corp.,* 50 Mass.App.Ct. 116, 117, 735 N.E.2d 407 (Mass.App.Ct.2000) (citations and internal quotations omitted).

In establishing its *prima facie* case, the **plaintiff** cannot rely on mere unsupported allegations to meet the prima facie standard, (as plaintiff herein has done), but **must offer affirmative proof**; this Court takes as true **only** those "specific facts" for which the court finds evidentiary support in the record. *Boit v. Gar-Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir.1992) (emphasis added); se*e Foster-Miller,* 46 F.3d at 145 ("[T]he plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts ... the court, in a manner reminiscent of its role when a motion for summary judgment is on the table ... must accept the plaintiff's (properly documented) evidentiary proffers as true"); *United Elec.,* 987 F.2d 39, 44 (1st Cir.1993); *see also Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 84 (1st Cir.1997) (finding district court properly took jurisdictional facts as true where facts were supported in

declarations and defendant did not rebut); *Anderson v. Century Prods. Co.,* 943 F.Supp. 137, 140 (D.N.H.1996) (citing *Foster-Miller*).

The court also considers uncontradicted facts alleged by the defendant. *See Mass. Sch. of Law,* 142 F.3d at 34. Plaintiff has neither offered affirmative proof, nor sufficiently supported its factual allegations. Conversely, as set forth above in detail, Defendants have rebutted plaintiff's vague generalities, and have also provide specific, uncontradicted facts which militate against a finding of personal jurisdiction. As such, plaintiff has not sustained its burden.

2. *Mandated Two-Part Inquiry*

"When embarking upon the fact-sensitive inquiry of whether a forum may assert personal jurisdiction over a defendant, the court's task is not a rote, mechanical exercise." *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995) (citations and internal quotation marks omitted); s*ee also Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76, 78 (1979). Rather, the court must pursue a two-part inquiry: (1) whether the plaintiff demonstrates that jurisdiction is authorized by the forum's long-arm statute; and, if authorized (2) whether such jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sawtelle,* 70 F.3d at 1387; *Foster-Miller,* 46 F.3d at 144. The law of the forum state determines whether a federal district court has jurisdiction over a nonresident defendant in a diversity suit. *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983). Under Massachusetts law, a court may exercise jurisdiction over a nonresident defendant if it is both authorized by statute and consistent with the strictures of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.,* 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979); *Nowak,* 94 F.3d at 712-13 (quoting *Pritzker v. Yari,* 42 F.3d 53, 60-61 (1st Cir.1994)).

a.    *Long-Arm Statute*

The Massachusetts' long-arm statute, Mass. Gen. Laws ch. 223A, §§ 1, 3 (2000), authorizes jurisdiction over a person, including corporations, to the limits allowed by the federal Constitution.  *See Daynard v. Ness, Motley, Loadhol, Richardson & Poole, P.A.,* 290 F.3d 42, 52 (1ˢᵗ Cir.2002) ("the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States'.") (quoting '*Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)).  "[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards ." *Sawtelle,* 70 F.3d at 1388.

Thus, while acknowledging that it is thus theoretically appropriate for the court to "sidestep the statutory inquiry and proceed directly to the constitutional analysis" under *Daynard, supra,* 290 F.3d at 52, Defendants specifically reserve the right to contest whether jurisdiction is actually conferred upon them under Mass. Gen. Laws ch. 223A, §§ 1, 3, in the event this Court deems an evidentiary hearing necessary.  However, *arguendo,* and solely for purposes of this Motion, Defendants assume that the Massachusetts Law-Arm Statute is apposite, and thus, proceed to a due-process analysis.

b.    *Due Process*

Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S.

457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).  Accordingly, the accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the putative defendant's contacts with the forum at issue.  *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1ˢᵗ Cir.1999).  Jurisdiction is not proper unless the contacts proximately result from the defendant's personal actions, which must create a substantial connection with the forum state.  *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quotations and citation omitted); *see also West Marine Products, Inc., et al v. Dolphinite, Inc.,*2005 WL 1000259 (D. Mass. April 6, 2005); *LaForest v. Ameriquest Mort. Co., et al,* 383 F.Supp.2d 278, 281-88 (D. Mass 2005); *Northeastern Land Services, Ltd. v. Schulke*, 988 F.Supp. 54 (D. R.I. 1997); *Adam v. Hensley*, 2008 WL 2079966 (D. NH., May 16, 2008).

The court may exercise two types of jurisdiction-general or specific.  "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state'."  *Mass. Sch. of Law, 1*42 F.3d at 34 (quoting *United Elec.,* 960 F.2d at 1088).  "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities."  *Id.*  In this case, neither general nor specific jurisdiction exists, and plaintiff has adequately alleged neither basis.

i.    General Jurisdiction Analysis

It is well-settled that the exercise of general jurisdiction requires more interaction on the part of the defendant with the forum than those minimum contacts needed to support specific jurisdiction, because once obtained, general jurisdiction permits the defendant to be sued in the

forum on *any* claim.    General jurisdiction exists over a defendant who has maintained

"continuous and systematic" contacts with the forum state, even if that activity is unrelated to the

suit. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868,

80 L.Ed.2d 404 (1984).    Plaintiff does not allege, nor can it with any degree of credibility, that

any Defendants conducted continuous and systemic activity in Massachusetts.    *PACER, passim.*

In fact, the only specific contact between plaintiff and any Defendants, alleged to occur in

Massachusetts, was a one-time meeting, of August 17, 2009, between Defendants Porter, Stoltz,

and perhaps PBS LLC, and Highsteppin's principal.    *PACER, Docket No. 4, Exhibit 1, ¶ 15.*

That singular event does not establish "continuous and systematic" activity in Massachusetts.

*Adam,* 2008 WL 2079966.    Likewise, no continuous and systematic activity is established by

virtue of any out-of-state (non-Massachusetts) negotiations.    *Schulke*, 988 F.Supp. 54.    Further,

Defendants made very few musical performances in Massachusetts, and certainly did not play

there continuously or systematically.    *See West Marine.,*2005 WL 1000259.

Thus, plaintiff's allegations, and Defendants' actual conduct, are inadequate to satisfy the

constitutional standard for exercising general jurisdiction.    *See, e.g., Helicopteros Nacionales de

Colombia, S.A. v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404 (1984) (regular

purchases of equipment and services within state insufficient to warrant assertion of general

jurisdiction); *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 214-15, 217 (1st Cir.1984) (no general

jurisdiction over defendant that advertised in journals which circulate in forum and employed

eight sales representatives to solicit orders, including two residents, within the forum).

Additionally, plaintiff should not be heard to profess the need for additional discovery, as

any claim of general jurisdiction would be futile.    As the court held in *LTX Corp. v. Daewoo

Corp.,* 979 F.Supp. 51 (D.Mass.1997), "[d]iscovery might have been useful to the plaintiff if a

closer assessment of the nature and extent of the defendant's contacts with Massachusetts were necessary. But because the factual predicate for jurisdiction that is proffered by the plaintiff falls so far short of the minimum contacts necessary under the Due Process Clause to sustain general jurisdiction, the benefit to the plaintiff of an opportunity for discovery is not realistically discernible." *Id.* at 59, *aff'd,* 141 F.3d 1149 (1st Cir.1998). Consequently, Defendants direct the Court's attention to the issue whether the exercise of specific personal jurisdiction is warranted.

ii.    Specific Jurisdiction Analysis

The First Circuit employs a three-part analysis to determine whether there are sufficient contacts to exercise specific personal jurisdiction over a defendant. *Sawtelle,* 70 F.3d at 1388-89; *West Marine,* 2005 WL 1000259; *LaForest,* 383 F.Supp.2d at 281-88; *Schulke*, 988 F.Supp. 54; *Adam*, 2008 WL 2079966. The specific categories are: 1) relatedness; 2) purposeful availment, and 3) reasonableness. *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 135 (1st Cir .2006).

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Nowak.,* 94 F.3d at 712-13 (quoting *Pritzker,* 42 F.3d at 60-61). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." *Phillips Exeter,* 196 F.3d at 288.

When deciding whether the claim underlying the litigation relates to or arises out of the defendant's in-forum activities, the court's focus is on the nexus between the defendant's contacts

and the plaintiff's cause of action. *Ticketmaster-New York, Inc. v. Alioto,* 26 F.3d 201, 206-07 (1st Cir.1994). It ensures that the defendant will not be subject to specific personal jurisdiction unless the defendant's contacts with the forum state caused the alleged harm. *Id.* This causal nexus is essential for specific jurisdiction where, as here, Defendants have insufficient contacts for general jurisdiction. *Interface Group,* 256 F.Supp.2d at 107. For contract claims, the court's inquiry focuses on "whether the defendant's forum-based activities are 'instrumental in the formation of the contract'." *Mass. Sch. of Law,* 142 F.3d at 35 (quoting *Hahn v. Vermont Law Sch.,* 698 F.2d 48, 51 (1st Cir.1983)).

Second, when determining if a defendant's contacts constitute purposeful availment, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable, the cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability. *Sawtelle,* 70 F.3d at 1389-91. Voluntariness is present where a defendant deliberately has engaged in significant activities within the forum, but not where the defendant's contacts with the forum are "random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person. *Burger King Corp. v.. Rudzewicz,* 471 U.S. 462, 475-76, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). Foreseeability exists where the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. at 2183 (internal quotation and citation omitted). *See also Sawtelle,* 70 F.3d at 1393.

Finally, if the first two parts of the test for specific jurisdiction have been fulfilled, the court must decide whether the exercise of personal jurisdiction is reasonable in light of the so-called "Gestalt factors." *Sawtelle,* 70 F.3d at 1394. This requires the court to consider: (1) the

defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *United Elec.,* 960 F.2d at 1088 (citing *Burger King,* 471 U.S. at 477); *see also Nowak,* 94 F.3d at 717.

The significance accorded the third prong depends on the strength of the plaintiff's showings with respect to the other two prongs of relatedness and purposeful availment. *See Nowak,* 94 F.3d at 717. If the plaintiff makes a weak showing of relatedness and purposeful availment, the court raises the bar for the third prong; likewise, if the plaintiff makes a strong showing on the first two prongs, the burden is eased for the plaintiff on the third prong. *See id.* Even the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. *See Burger King,* 471 U.S. at 476-478; *Ticketmaster-New York,* 26 F.3d at 209-10.

Plaintiff has not made a strong showing of relatedness and purposeful availment, and Defendants' contacts with Massachusetts are insufficient to satisfy either the "relatedness" or "purposeful availment" prongs of the jurisdictional test. Therefore, it is respectfully submitted that it is unnecessary for this Court to analyze the reasonableness of exercising jurisdiction over Defendants under the Gestalt factors, as set forth below.

a.    Relatedness

To determine personal jurisdiction in contract cases, the court must ask "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." *Phillips Exeter,* 196 F.3d at 289. Moreover, the in-state effect of a defendant's

out-of-state conduct does not itself confer personal jurisdiction. *See Burger King,* 471 U.S. at 474; *Phillips Exeter,* 196 F.3d at 291.  While the transmission of information by telephone or mail into the forum state may be a contact for purposes of a personal jurisdiction analysis, *Sawtelle,* 70 F.3d at 1389-90, those communications must not be merely ancillary to the plaintiffs' claims; rather, they must "form an important or [at least] material, element of proof in the plaintiff's case."  *United Elec.,* 960 F.2d at 1089 (internal quotation marks and citation omitted).

In tort cases, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action."  *Phillips Exeter.,* 196 F.3d at 289.  Case law is clear, however, that the fact that harm was suffered in Massachusetts as a result of actions which occurred elsewhere is insufficient to create specific personal jurisdiction. *See Mass. Sch. of Law,* 142 F.3d at 36 ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative").

For the relatedness requirements to be satisfied, "the action must directly arise out of the specific contacts between the defendant and the forum state."  *Sawtelle,* 70 F.3d at 1389.  In addition, "in a contract case, the defendant's forum-based activities must be instrumental in the formation of the contract," *United Elec.,* 960 F.2d at 1089 (internal quotations marks and citation omitted), a factor clearly not present here.  Again, plaintiff's pleadings do not contain any specific allegations that Defendants' **Massachusetts-based** activities were instrumental in the formation of the Contract[9], nor could they, as the genesis of the interaction between plaintiff, through its principal, and Defendants, occurred in Florida and culminated in New Orleans, where the Contract was executed, without any Massachusetts-based Defendant activities occurring in

---

[9] Defendants are cognizant of the Contract's provisions which purport to apply Massachusetts law, and gratuitously state that the Contract was "entered into in the Commonwealth of Massachusetts" (a factual inaccuracy).

the interim.

Here, the plaintiff has alleged claims against Defendants for breach of contract and sundry intentional and negligent torts: either way, the claims do not satisfy the relatedness requirement. Plaintiff's claims can only arise from Defendants' alleged breach of the Contract. Plaintiff's pleadings do not specifically allege any offending conduct by Defendants in Massachusetts, nor could they, as all the allegedly offending acts or omissions generally complained of by the plaintiff occurred outside Massachusetts, and more specifically, primarily in Louisiana. Plaintiff cannot show that any Massachusetts-based conduct by the Defendants was a breach of the Contract or the proximate cause of any tortious injury or damage to plaintiff, and thus, none of the activities at issue are related to any conduct by Defendants in Massachusetts. Therefore, plaintiff cannot satisfy the relatedness prong of the specific jurisdiction analysis. *West Marine,* 2005 WL 1000259; *Global Health,* 1999 WL 33117099; *Adam*, 2008 WL 2079966.

b.    Purposeful Availment

Although Defendants maintain that plaintiff's failure to demonstrate relatedness warrants dismissal or transfer, due to a lack of personal jurisdiction, Defendants, *arguendo,* also maintain that plaintiff's inability to establish purposeful availment further solidifies the conclusion that jurisdiction is improper. "The focus in this second requirement is on voluntariness and foreseeability." *Laminate Sales, Inc. v. Davis,* 403 F.3d 14, 25 (1st Cir.2005). From a commercial standpoint, even assuming, *arguendo,* that Defendants were aware that some of their merchandise could be sold in Massachusetts, this awareness is insufficient to establish purposeful availment. *See Asahi,* 480 U.S. at 112-13 (defendant's knowledge that some of its product would end up in California does not demonstrate any action by defendant "to purposely

avail itself of the California market"); *Rodriguez,* 115 F.3d at 85 (third-party defendant's awareness that the stream of commerce would move its product into the forum "alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts"); *Boit,* 967 F.2d at 683 ("'mere awareness' that a product may end up in the forum state does not constitute 'purposeful availment'").

In *Bond Leather,* the First Circuit held that, even though a defendant's mailing four letters to, and receiving a telephone call from, the plaintiff in Massachusetts was tantamount to "transacting any business" for purposes of M.G.L. ch. 223A, § 3(a), such contacts were not sufficient to demonstrate purposeful availment. *Bond Leather,* 764 F.2d at 933-35 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Similarly, in *Phillips Exeter,* 196 F.3d at 292, the First Circuit stated that "[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship-say, by solicitation-the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." (emphasis in original) (citation omitted). The First Circuit has also expressly decided that "[t]he mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required." *Sawtelle,* 70 F.3d at 1392. Defendants respectfully submit that an artist-manager relationship (which plaintiff, and not Defendants, initiated in Florida) is a fiduciary relative of, and akin to, the attorney-client relationship, and thus, deserves the same holding. In any event, the Defendants have not, even remotely, engaged in enough contacts to establish purposeful availment.

        c.     Reasonableness

In addition to relatedness and purposeful availment, the exercise of jurisdiction over a

defendant must be reasonable. *See Ticketmaster-New York,* 26 F.3d at 209. This requirement ensures that the assertion of jurisdiction over a defendant "does not offend 'traditional notions of fair play and substantial justice'." *Internat'l Shoe,* 326 U.S. at 316 (quoting *Milliken,* 311 U.S. at 463); s*ee Asahi,* 480 U.S. at 113. Reasonableness requires the consideration of five Gestalt factors: (1) defendant's burden to appear, (2) forum state's interest in adjudicating the dispute, (3) plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *See Burger King,* 471 U.S. at 477; *Foster-Miller,* 46 F.3d at 150. The reasonableness inquiry operates on a sliding scale that depends on the strength of the plaintiff's showing of relatedness and purposeful availment. *Sawtelle,* 70 F.3d at 1394. Where, as in this case, the plaintiff has made a weak (if non-existent) showing of relatedness and/or purposeful availment, the Gestalt factors can (and, respectfully, should) tip the balance against the exercise of personal jurisdiction. *See Nowak,* 94 F.3d at 717.

With regard to the first factor, Defendants assert that it would be a substantial burden to defend themselves in Massachusetts given its considerable distance from their primary theatre of operation: namely, the center of the "Who Dat Nation", New Orleans, Louisiana. Although somewhat of a close question, and mindful that "unique hardship" may not be present, it is also clear that the aggregate burden on all Defendants is undeniable, especially given the parties' express rejection of a Massachusetts-based forum-selection clause, and the dearth of Massachusetts-based conduct by Defendants. This factor militates in Defendants' favor.

As to the second factor, while Massachusetts may have an interest in litigating this case because it involves a Massachusetts LLC, so does Louisiana, as virtually the entire controversy centers on Defendant's non-Massachusetts conduct. Thus, Louisiana has an equal (if not greater)

interest in adjudicating this case. The second factor, therefore, tips in Defendants' favor. *See LaVallee,* 193 F.Supp.2d at 304; *LaForest,* 383 F.Supp.2d at 281-88.

As for the third factor, Massachusetts is undeniably a more convenient forum for plaintiff. However, plaintiff can undoubtedly obtain efficient and effective relief in Louisiana, especially since any potential judgment against Defendants would, in all likelihood, need to be made executory in Louisiana in order to try and impinge any of Defendants' assets such as real estate (known as "immovables" under Louisiana nomenclature), which plaintiff admits are located in Louisiana, and not in Massachusetts. Thus, from a practical standpoint, the third factor tilts in Defendants' favor.

Regarding the fourth factor, there is no convincing argument that forcing Defendants to appear in Massachusetts would promote a more effective resolution of the controversy, and usually, this factor is a wash. *See Nowak,* 94 F.3d at 718. Likewise, as to the fifth and final factor, no party can legitimately claim any unique "social impact". Both these factors are at best, neutral, if not marginally in Defendants' favor. *LaForest,* 383 F.Supp.2d at 281-88. Given that plaintiff's showing of relatedness and/or purposeful availment in minimal at best, and that the Gestalt factors tip in Defendants' favor, it is respectfully submitted that this Honorable Court should find personal jurisdiction lacking, and thus, either dismiss this matter outright, or alternatively, transfer it to the USDC-EDLA under 28 U.S.C. § 1406(a).

## III.   CONCLUSION

In sum, as shown above, it is respectfully submitted that this Honorable Court can and should: 1) dismiss this action pursuant to FRCP 17 and FRCP12(b)(6), as Highsteppin' is no longer a juridical entity, and thus, cannot be a real party in interest; 2) unquestionably transfer this matter to USDC-EDLA, for the convenience of the parties and witnesses, under 28 U.S.C. §

1404(a); 3) deem venue improper in Massachusetts under 28 U.S.C. § 1391(a), and thus, either

dismiss this matter outright or transfer to USDC-EDLA under 28 U.S.C. § 1406(a); and 4) find

that personal jurisdiction over Defendants is lacking, and thus, again, dismiss this matter outright

or transfer to USDC-EDLA under 28 U.S.C. § 1406(a).  Defendants further assert that no

evidentiary hearing, nor oral argument, is necessary for a just determination of the issues *sub

judice* presented herein.


Respectfully submitted:


  /s/ John O. Pieksen, Jr.  
John O. Pieksen, Jr. (LA Bar #21023)
**Admitted Herein Pro Haec Vice 2/1/2010**
**JOHN PIEKSEN & ASSOCIATES, LLC**
829 Baronne Street
New Orleans, LA 70113
Telephone: 504.581.9322
Facsimile: 504.324.4844
jpieksen@cox.net
**Counsel for Defendant, George Porter, Jr.**

and

  /s/ Ronnie Glynn Penton  
Ronnie Glynn Penton (LA Bar # 10462)
**Admitted Herein Pro Haec Vice 2/1/2010**
**THE PENTON LAW FIRM**
209 Hoppen Place
Bogalusa , LA 70427
Telephone: 985-732-5651
Email: fedcourtmail@rgplaw.com
**Counsel for Defendants, David Russell**
**Batiste, Jr., Brian Stoltz, and Porter-**
**Batiste-Stoltz LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been re-served upon all

counsel of record, as per the Court's order of March 4, 2010, by ECF filing, facsimile, electronic

transmission, and/or by depositing same in the United States mail, properly addressed and

postage prepaid, this 4th day of March, 2010.

___/s/ John O. Pieksen, Jr. _____